IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:13-cr-310-RDA |
| | ) | |
| JULIO ESTIVEN GRACIA RAMIREZ, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Julio Estiven Gracia Ramirez's *pro se* Motion for Compassionate Release and for a reduction pursuant to the 821 Amendments to the Sentencing Guidelines. Dkt. 455. This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with the Government's Opposition (Dkt. 458), this Court DENIES the Motion for the reasons that follow.[1]

## I. BACKGROUND

The facts here are appropriately drawn from the Statement of Facts to which Defendant admitted during his plea colloquy and the Presentence Investigation Report (the "PSR") adopted by the Court at sentencing. Dkt. Nos. 146 (the "SOF"); 218 (the "PSR"); 249 (the "J&C"). Defendant is a citizen of Bogota, Colombia. Dkt. 218 at 2. While in Bogota, Defendant participated in a series of armed robberies specifically selecting and targeting wealthy taxicab passengers, one of which resulted in the death of a Special Agent ("SA") of the Drug Enforcement Administration ("DEA"). Defendant and his group used dangerous weapons such as knives, tasers,

---

[1] To the extent Defendant's request for a "friend of The [sic] court" can be construed as a motion for appointment of counsel, that motion is also denied. Dkt. 455. Defendants are not entitled to appointment of counsel post-conviction. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *see also Hunt v. Nuth*, 57 F.3d 1327, 1340 (4th Cir. 1995). Moreover, there are no extraordinary circumstances present here that would justify the appointment of counsel.

1

and chemical sprays to intimidate, trap, and subdue taxicab passengers in order to rob them of their valuables.

On June 20, 2013, Defendant picked up SA James Watson of the DEA in a taxicab around 11:00 p.m. and transported SA Watson a short distance whilst other members of his group followed the taxicab. Defendant feigned a mechanical issue and stopped the car to allow other members of his group to enter the vehicle to trap and rob SA Watson. SA Watson was shocked with a taser and stabbed before escaping. Although he escaped and made it to a hospital, SA Watson later died of his wounds.

A federal grand jury returned an indictment charging Defendant and several of his co-conspirators for their roles in the death of SA Watson. Dkt. 15. Defendant was charged with: (1) aiding and abetting the murder of an internationally protected person, in violation of 18 U.S.C. § 1116(a); (2) aiding and abetting the murder of an officer or employee of the United States, in violation of 18 U.S.C. § 1114; (3) conspiracy to kidnap, in violation of 18 U.S.C. § 1201(c); and (4) kidnapping, in violation of 18 U.S.C. § 1201(a). *Id.* at 5-9. Defendant was arrested in Colombia and extradited to the United States, where he pleaded guilty to aiding and abetting the murder of an internationally protected person and to conspiring to kidnap. Dkt. 91. Former U.S. District Judge Gerald Bruce Lee sentenced Defendant to 327 months of imprisonment, to be followed by five years of supervised release. Dkt. Nos. 249.

Defendant filed a motion for compassionate release *pro se* on January 29, 2024. Dkt. 455. In his pending Motion, Defendant seeks a reduction of his sentence to 199 months based on the 821 Amendments and his family circumstances. *Id.* On March 1, 2024, the Government filed its opposition to the Motion. Dkt. 458.

2

## III. ANALYSIS

The legal standard for evaluating a motion for compassionate release is well-settled. Simply put, a defendant seeking a compassionate release under 18 U.S.C. § 3582(c)(1)(A) bears the burden of establishing (1) that there are "extraordinary and compelling reasons" warranting compassionate release and (2) that analysis of the § 3553(a) factors counsels that compassionate release is appropriate as a matter of judicial discretion. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Sprague*, 838 F. App'x 775, 775-76 (4th Cir. 2021); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022). A defendant must also first exhaust his administrative remedies by submitting a request for compassionate release to the warden at his facility of confinement. Applying that standard here, Defendant's motion for compassionate release will be denied.

### A. Amendment 821

Defendant first seeks a sentence reduction pursuant to Amendment 821 of the Sentencing Guidelines based on having been a zero-point offender. Dkt. 455. But Defendant's sentence involved the death of a DEA agent and, pursuant to USSG § 4C1.1(a)(4), a defendant is not entitled to a reduction as a zero-point offender where the Defendant's offense resulted in death or bodily injury. Accordingly, Defendant's Motion, to the extent it is premised on Amendment 821, will be denied.[2]

### B. Exhaustion

In seeking compassionate release, a defendant must first establish that he has made a

---

[2] As the Government correctly notes, although Defendant's Motion makes reference to the First Step Act, Defendant does not fully develop that argument and it is clear that the First Step Act would not apply to Defendant as he was not convicted of a controlled substance offense, did not receive a stacked sentence, and is not eligible for the safety valve provisions. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (the duty to construe *pro se* pleadings liberally "does not require . . . courts to conjure up questions never squarely presented to them").

request of the warden at his facility and that the warden has either denied the request or more than thirty days has passed without a response. 18 U.S.C. § 3582(c)(1)(A). As this Court has previously noted, it is a defendant's burden to establish that he has exhausted his administrative remedies. *United States v. Sidhu*, 2021 WL 2894723, at *2. Here, Defendant makes a cursory allegation that he exhausted his administrative remedies, but he does not allege a date on which he made the request or state on what facts his request for compassionate release to the warden was premised. Dkt. 455. Instead, Defendant simply asserts that he made a request "for various reasons." *Id.* at 1. The Government contends that Defendant has not exhausted. Dkt. 458 at 9. Because Defendant has failed to meet his burden of establishing that he has exhausted his administrative remedies, it does not appear that the Court can consider Defendant's Motion. Accordingly, the Motion will be denied.

## C. Extraordinary and Compelling Circumstances

Even assuming, *arguendo*, that Defendant has exhausted his administrative remedies, Defendant has failed to establish that extraordinary and compelling circumstances warrant a sentence reduction. Defendant appears to raise three arguments to support the existence of extraordinary and compelling circumstances: (i) his role in the offense; (ii) his rehabilitation; and (iii) his family circumstances.

Defendant first seems to suggest that his co-defendants were more responsible for the death of SA Watson than Defendant. Dkt. 455 at 2 (asserting "co-defendants admitted to the act" and "due to the action of his co-defendants"). But that argument seeks to undermine the fact of his conviction itself and is not a basis for reducing Defendant's sentence. *See United States v. Trapp*, 2023 WL 2978941, at *4 (N.D. W.Va. Apr. 17, 2023) (denying request for compassionate release

4

based on the defendant's role in the offense as not extraordinary and compelling).[3]

Defendant next argues that he is entitled to a sentence reduction based on his rehabilitation. Here too, Defendant's argument fails. Defendant neither explains why his rehabilitation is extraordinary nor attaches any information supporting his conclusory assertion that his rehabilitation supports his motion for compassionate release. Defendant's rehabilitation and education during his term of incarceration are commendable, but this is the expectation for every prisoner. The Sentencing Commission's policy statement provides that a defendant's rehabilitation during imprisonment "is not, by itself, an extraordinary and compelling reason" for a sentencing reduction. U.S.S.G. § 1B1.13(d); 28 U.S.C. § 994(t). Although "rehabilitation *alone* cannot be considered an extraordinary and compelling reason for release, it may be considered as one factor among several," if together they are sufficient to establish extraordinary and compelling circumstances. *United States v. Davis*, 99 F.4th 647, 659 (4th Cir. 2024). Here, Defendant would be relying on his rehabilitation alone and, thus, by Congressional mandate, his claim fails.

Finally, Defendant asserts that he can establish extraordinary and compelling circumstances based on his family circumstances. Defendant asserts that his son needs brain surgery and will require a caregiver. Dkt. 455 at 3. Both of Defendant's children are now adults based on their ages at the time that the PSR was drafted. Dkt. 218 ¶ 62 (indicating that Defendant's sons were 14 and 9 in 2014). Moreover, their mother and their grandparents were both involved in the children's lives. *Id.* Defendant does not provide any information suggesting that his son would not have any other individuals available to care for him as he recovers from surgery. Courts in this Circuit have consistently denied compassionate release where the defendant has failed to

---

[3] Importantly, the guidelines and the sentencing process takes account of a defendant's role in the offense. Here, Defendant did not receive either an aggravating or mitigating adjustment for his role in the offense. Dkt. 218 ¶ 43.

5

show that he is the only caregiver available. *See United States v. Fleming*, No. CR 2:18-00141, 2022 WL 597529, at 3 (S.D.W. Va. Fed. 28, 2022) (denying motion for compassionate release where defendant failed to provide evidence of family member's illness or his own status as the only available caregiver); *see also United States v. Allen*, No. 4:13-CR-00024, 2021 WL 3025458 (W.D. Va. July 16, 2021) (finding that defendant failed to allege that he is the only available caregiver for his mother or that she is incapacitated). Although Defendant's son would surely desire to have his father with him as he undergoes a serious medical procedure, many families experience emotional and financial strife as a result of their loved one's incarceration, and it is neither an unusual nor extraordinary outcome after a criminal conviction. Rather, it is a consequence of the criminal choices that Defendant made. "[F]amily hardship is normally not a cognizable 'extraordinary and compelling reason' for release, because it nearly always attends a carceral sentence." *Benton v. United States*, No. 2:21-CR-33(1), 2023 WL 7027957, at 6 (E.D. Va. Oct. 25, 2023) (citing *United States v. Sarratt*, No. 3:01-cr-16-GCM, 2022 WL 214132, at 3 (W.D.N.C. Jan. 24, 2022), *reconsideration denied*, No. 3:31-cr-16-GCM, 2022 WL 860451, *aff'd*, No. 22-6335, 2022 WL 3699667 (4th Cir. Aug 26, 2022)). Accordingly, Defendant's family circumstances fail to meet the extraordinary and compelling standard for circumstances warranting Defendant's early release.

      D. The § 3553(a) Factors Weigh Against a Reduction in Defendant's Sentence.

      Even assuming *arguendo* that Defendant had established extraordinary and compelling circumstances warranting his release (which he has not), Defendant's motion would still fail because the § 3553(a) factors concerning Defendant's time served in prison thus far, the danger that Defendant poses to the community, and the need to avoid unwanted sentence disparities do not support his release.

Perhaps most importantly, Defendant committed a very serious crime that resulted in the death of DEA Special Agent Watson. This is something Defendant only nominally acknowledges in his briefs and, at points, attempts to disclaim any responsibility for. Defendant has served less than half of his sentence. The amount of time that Defendant has served thus far for a series of violent robberies that culminated in the murder of a federal officer is insufficient to fulfill the goals of sentencing. *See United States v. Lloyd*, No. 2:11cr36, 2020 WL 4501811, at 3 (E.D. Va. Aug. 5, 2020) (denying motion for sentencing reduction when defendant "ha[d] served less than half of his sentence"); *see also United States v. Hill*, No. 3:14cr114, 2020 WL 6049912, at 5 (E.D. Va. Oct. 13, 2020) (denying motion when defendant had "served only 40% of his 188 month sentence"). Further reducing Defendant's sentence under these circumstances would not serve the goals of just punishment (where his crime resulted in the death of a DEA Special Agent), would not serve the goals of deterrence or assist in the protection of internationally protected persons, and would not promote respect for the law.

Defendant's prior conduct also demonstrates the danger that Defendant presents to the community. Defendant engaged in an orchestrated scheme to kidnap, threaten, assault, and rob unsuspecting tourists. As noted in the PSR, Defendant and his co-conspirators participated in upwards of 30 robberies prior to the robbery of SA Watson, and at least six of those victims were stabbed. Dkt. 218 ¶ 29. This suggests that Defendant's Criminal History Category I severely understates the danger that Defendant presented to the community; indeed, the only reason that Defendant does not have a higher criminal history is that, prior to the incident with SA Watson, Columbian authorities did not *catch* Defendant. Additionally, Defendant will be brought into ICE custody upon release, so any potential release from a reduction in Defendant's sentence is futile rather than compassionate. *See United States v. Sydykov*, No. 18-cr-212, Order at 3 (Dkt. 103),

7

(E.D. Va. Aug. 21, 2020) (holding that deportation consequences do not preclude defendant from being classified as danger to the community).  In sum, Defendant's prior conduct renders him a serious risk to public safety and precludes any further reduction to his sentence.  *See Brown v. United States*, No. 2:98-cr-47, 2021 WL 3272203, at *4 (E.D. Va. July 30, 2021) (denying sentencing reduction in light of "series of violent acts" that defendant committed); *see also United States v. Clayton*, No. 3:07CR488-01, 2021 WL 2689838, at *3 (E.D. Va. June 30, 2021) (denying reduction when defendant showed "willingness to engage in conduct that [was] dangerous to others"); *Mosley v. United States*, No. 2:11-cr-58-3, 2021 WL 2386120, at *2 (E.D. Va. June 10, 2021) (denying reduction when defendant "committed multiple armed robberies").  Accordingly, Defendant's argument fails because the §3353(a) factors do not support Defendant's motion for compassionate release.

## IV.  CONCLUSION

In sum, Defendant has failed to establish that he is eligible for a sentence reduction pursuant to Amendment 821.  Moreover, Defendant has failed to establish that he has exhausted his administrative remedies, that extraordinary and compelling reasons warrant a sentence reduction, or that the § 3553(a) factors support a sentence reduction.  Accordingly, for the foregoing reasons, it is hereby ORDERED that Defendant's Motion (Dkt. 455) is DENIED.

If Defendant wishes to appeal this decision, he must file a written Notice of Appeal with the Clerk of this Court within fourteen (14) days of receipt of this Memorandum Opinion and Order.  Failure to file a timely Notice of Appeal waives the right to appeal.

The Clerk is directed to forward this Opinion and Order to counsel and to Defendant.

It is SO ORDERED.

Alexandria, Virginia
October 7 , 2024

/s/

Rossie D. Alston, Jr.
United States District Judge

8