IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 1:13-CR-310 (RDA) |
| | ) | |
| JULIO GRACIA RAMIREZ, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Julio Gracia Ramirez's Second Motion

for Compassionate Release. Dkt. 469. This matter has been fully briefed and is now ripe for

disposition. Considering the Motion together with the Government's Opposition (Dkt. 472), the

Court DENIES the Motion for the reasons that follow.

### I.    BACKGROUND

As the Court set forth in the prior Memorandum Opinion and Order (Dkt. 467), the facts

here are appropriately drawn from the Statement of Facts to which Defendant admitted during his

plea colloquy and the Presentence Investigation Report (the "PSR") adopted by the Court at

sentencing. Dkt. Nos. 146 (the "SOF"); 218 (the "PSR"); 249 (the "J&C"). Defendant is a citizen

of Bogota, Colombia. Dkt. 218 at 2. While in Bogota, Defendant participated in a series of armed

robberies specifically selecting and targeting wealthy taxicab passengers, one of which resulted in

the death of a Special Agent ("SA") of the Drug Enforcement Administration ("DEA"). Defendant

and his group used dangerous weapons such as knives, tasers, and chemical sprays to intimidate,

trap, and subdue taxicab passengers in order to rob them of their valuables.

On June 20, 2013, Defendant picked up SA James Watson of the DEA in a taxicab around

11:00 p.m. and transported SA Watson a short distance whilst other members of his group followed

the taxicab. Defendant feigned a mechanical issue and stopped the car to allow other members of his group to enter the vehicle to trap and rob SA Watson. SA Watson was shocked with a taser and stabbed before escaping. Although he escaped and made it to a hospital, SA Watson later died of his wounds.

A federal grand jury returned an indictment charging Defendant and several of his co-conspirators for their roles in the death of SA Watson. Dkt. 15. Defendant was charged with: (1) aiding and abetting the murder of an internationally protected person, in violation of 18 U.S.C. § 1116(a); (2) aiding and abetting the murder of an officer or employee of the United States, in violation of 18 U.S.C. § 1114; (3) conspiracy to kidnap, in violation of 18 U.S.C. § 1201(c); and (4) kidnapping, in violation of 18 U.S.C. § 1201(a). *Id.* at 5-9. Defendant was arrested in Colombia and extradited to the United States, where he pleaded guilty to aiding and abetting the murder of an internationally protected person and to conspiring to kidnap. Dkt. 91. Former U.S. District Judge Gerald Bruce Lee sentenced Defendant to 327 months of imprisonment, to be followed by five years of supervised release. Dkt. 249.

Defendant filed his first motion for compassionate release *pro se* on January 29, 2024. Dkt. 455. On October 7, 2024, the Court issued a Memorandum Opinion and Order denying the motion. Dkt. 467. In that Memorandum Opinion and Order, the Court found: (i) that Defendant was not entitled to a reduction in sentence pursuant to Amendment 821 to the Sentencing Guidelines; and (ii) that Defendant had failed to exhaust his motion for compassionate release; and (iii) that, even if Defendant had exhausted his motion, Defendant had failed to demonstrate extraordinary and compelling circumstances warranting a sentence reduction. *Id.*

On March 13, 2025, Defendant filed his second Motion for Compassionate Release. Dkt. 469 (the "Second Motion"). In his Second Motion, Defendant attempts to address each of the

bases for the Court's denial of his prior motion. *Id.* Defendant argues that his son is incapable of caring for himself and that the son's mother and grandmother are not available caregivers. *Id.* Defendant also argues that the 18 U.S.C. § 3553(a) factors weigh in favor of compassionate release, because: (i) Defendant does not speak English; (ii) he has served over a decade in prison; (iii) he was incarcerated during the COVID-19 pandemic; and (iv) he has refrained from committing disciplinary infractions and has sought out rehabilitation programs. *Id.*

On April 4, 2025, the Government filed its Opposition. Dkt. 472.

## II.    ANALYSIS

The legal standard for evaluating a motion for compassionate release is well-settled. Simply put, a defendant seeking a compassionate release under 18 U.S.C. § 3582(c)(1)(A) bears the burden of establishing (1) that there are "extraordinary and compelling reasons" warranting compassionate release and (2) that analysis of the § 3553(a) factors counsels that compassionate release is appropriate as a matter of judicial discretion. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Sprague*, 838 F. App'x 775, 775-76 (4th Cir. 2021); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022). Applying that standard here, Defendant's Second Motion will be denied.[1]

### A.    Extraordinary and Compelling Circumstances

In his Second Motion, Defendant's sole basis for extraordinary and compelling circumstances is the status of his son, whom Defendant states was diagnosed with autism, has undergone brain surgery, and requires 24-hour a day care. Dkt. 469 at 1. Defendant asserts that his son's mother is "in the picture," but that she must work and that his son's grandmother "can

---

[1] With respect to this Second Motion, the Government does not raise the issue of exhaustion and thus neither will the Court.

barely take care of herself." *Id.* at 2. Thus, Defendant asserts that he is the only available caregiver for his son.

That Defendant's incarceration continues to pose difficulties for his family is to be expected, just as there are difficulties faced by the family of Defendant's victim who were also forced to move on without the presence of a loved family member. Moreover, the financial constraints on his son's mother do not render her unavailable. As district courts within this Circuit recognize, it may be difficult to secure childcare when a child's remaining parent must work, but that does not render that remaining parent unavailable or incapacitated. *See United States v. Guest*, 2022 WL 2104492, at *13 (D. Md. June 9, 2022); *see also Benton v. United States*, 2023 WL 7027957, at *6 (E.D. Va. Oct. 25, 2023) (finding that defendant's claim of "financial hardship" was not extraordinary and compelling); *United States v. Parks*, 2022 WL 256329, at *3 (W.D.N.C. Jan. 26, 2022) (denying motion for compassionate release even though the defendant's wife "no doubt bears a heavy burden in providing for their son's education while also working"). Moreover, Defendant notes that his sister is also in the "community" and does not explain why she is not an available caregiver for his son. Dkt. 469-1. And, as the Court noted in its prior Memorandum Opinion and Order, Defendant also has another son who is now an adult. Dkt. 467 at 5.[2] Thus, Defendant has not established that he is the only available caregiver for his son. *United States v. Allen*, 2021 WL 3025458 (W.D. Va. July 16, 2021) (finding that defendant failed to allege that he is the only available caregiver for his mother or that she is incapacitated). Accordingly, Defendant has failed to show that extraordinary and compelling circumstances exist that warrant compassionate release or a sentence reduction.

---

[2] The Court notes that Defendant's reentry plan attached to his first motion for compassionate release indicated that he had four supporting family members. Dkt. 455-1.

4

B.    18 U.S.C. § 3553(a) Factors

In its prior Memorandum Opinion and Order, the Court found that the Section 3553(a) factors also did not weigh in favor of Defendant's release or a sentence reduction. Dkt. 467 at 6-8. As the Government notes, to date, Defendant has served less than half of his sentence. Dkt. 472 at 8; *see United States v. Lloyd*, 2020 WL 4501811, at *3 (E.D. Va. Aug. 5, 2020) (denying motion for sentencing reduction when defendant "ha[d] served less than half of his sentence"); *United States v. Hill*, 2020 WL 6049912, at *5 (E.D. Va. Oct. 13, 2020) (denying motion when defendant had "served only 40% of his 188-month sentence").

More importantly, Defendant committed a very serious offense that resulted in the death of a federal agent. *See, e.g.*, *United States v. Webster*, 611 F. Supp. 3d 193, 203 (E.D. Va. 2020) (holding that nature of circumstances of the offense weigh "heavily" against release where the offense of conviction resulted in death). As the Court previously held: "Defendant engaged in an orchestrated scheme to kidnap, threaten, assault, and rob unsuspecting tourists." Dkt. 467 at 7. Thus, Defendant's criminal history category likely underrepresents the danger that Defendant presents to the community here and abroad. *See Brown v. United States*, 2021 WL 3272203, at *4 (E.D. Va. July 30, 2021) (denying sentencing reduction in light of "series of violent acts" that defendant committed); *see also United States v. Clayton*, 2021 WL 2689838, at *3 (E.D. Va. June 30, 2021) (denying reduction when defendant showed "willingness to engage in conduct that [was] dangerous to others"); *Mosley v. United States*, 2021 WL 2386120, at *2 (E.D. Va. June 10, 2021) (denying reduction when defendant "committed multiple armed robberies"). Thus, a reduction in sentence or compassionate release would not serve the goals of just punishment, deterrence, assist in the protection of internationally protected persons, or promote respect for the law.

5

Rather than address the Court's prior analysis of the Section 3553(a) factors, Defendant asserts that the factors weigh in his favor because of his lack of language skills, length of time incarcerated, the pandemic, and his rehabilitation. Dkt. 469 at 3. But that Defendant may have experienced difficulty due to his lack of English language skills during a lengthy incarceration is entirely a product of the fact that Defendant committed this offense in the first place. Additionally, although it is likely generally true that life was more difficult for Defendant during the COVID-19 pandemic, that is not unique to Defendant and Defendant does not identify any specific ways in which the COVID-19 pandemic was difficult for him such that he would warrant a sentence reduction. Finally, Defendant makes a general assertion that he is rehabilitated and has not faced discipline in prison. Neither Defendant's first nor his Second Motion attach any documentation regarding his disciplinary history or participation in programming during his incarceration. Moreover, although Defendant purports to be rehabilitated, there is no recognition in either motion for compassionate release that he has filed of the harm that he caused nor remorse for his actions. Thus, Defendant's arguments do not alter this Court's analysis of the Section 3553(a) factors.

III.    CONCLUSION

In sum, Defendant has failed to establish that extraordinary and compelling circumstances warrant a sentence reduction or that the Section 3553(a) factors support a sentence reduction. Accordingly, it is hereby ORDERED that Defendant's Motion (Dkt. 469) is DENIED.

If Defendant wishes to appeal this decision, he must file a written Notice of Appeal with the Clerk of this Court within fourteen (14) days of receipt of this Memorandum Opinion and Order. Failure to file a timely Notice of Appeal waives the right to appeal.

It is SO ORDERED.

Alexandria, Virginia
May 6, 2025

_____ /s/
Rossie D. Alston, Jr.
United States District Judge